# CASES DETERMINED

# August Term, 1921.

---

ADNEY, Plaintiff, vs. KRAUS, Respondent, and KLEKOSKI,
Interpleaded, Appellant.

*June 1—August 10, 1921.*

*Contracts: Object of interpretation: Sale of farm and personalty
thereon: Limited to property of vendor on farm: Other prop-
erty: Knowledge of vendee as to ownership: Evidence: Ref-
ormation of contract.*

1. The "interpretation" of a contract consists in ascertaining the
meaning of the words used, the purpose being to give effect
to the actual contract entered into by the parties.

2. A contract for the sale of a farm, together with live stock, hay,
grain, etc., "everything now on the farm except household
goods," must be deemed merely to include personalty belong-
ing to the seller, and not property on the premises not belong-
ing to him.

3. Where a contract for the sale of a farm, including personalty,
did not attempt to include personalty on the premises not be-
longing to the vendor, the question whether the purchaser,
who converted timber on the premises which had been previ-
ously sold to and cut by a third person, was responsible, or
whether the vendor was responsible, depends on whether the
purchaser knew of the sale and that the timber did not pass,
and for that reason evidence as to his knowledge is admissible
in construing the contract.

4. In an action for the conversion of cut timber on a farm, which
timber had been previously sold to plaintiff, the evidence is
*held* to establish that the purchaser of the farm knew before
purchasing that the timber had been sold; hence, though the
sale included personalty on the farm, title to the timber which
had been cut did not pass.

5. The evidence is also *held* to show that the contract expressed
the intention of the parties and that it was not intended to
include the timber belonging to a third person which the
purchaser converted, and reformation of the instrument is
entirely unnecessary to protect the vendor.

APPEAL from a judgment of the circuit court for Richland county: GUSTAVE G. GEHRZ, Judge. *Reversed.*

This is an appeal by the interpleaded defendant, *Klekoski,* from a judgment rendered in favor of the plaintiff and against said interpleaded defendant, *Klekoski,* for the sum of $579.32 damages and costs.

On the 4th day of February, 1919, and for many years prior thereto, *Klekoski* was the owner of a certain farm, consisting of 187 acres of land in the town of Orion, Richland county, Wisconsin, known as the Dooley farm.

Some time in the month of March, 1917, the interpleaded defendant, *Klekoski,* entered into an agreement with the plaintiff whereby the latter purchased from such interpleaded defendant the right to cut all the standing timber on fifteen acres of the said *Klekoski* farm for a consideration of $400, and under and by the terms of such agreement the said plaintiff had until January 1, 1920, to cut and remove said timber.

Thereafter said plaintiff proceeded to and did cut a large quantity of pole wood, excelsior wood, saw logs, and cordwood, part of which plaintiff removed from the premises and part of which remained on said premises.

On or about the 4th day of February, 1919, *Klekoski,* being then the owner of said land together with a large amount of stock, hay, grain, farm machinery, and other personal property, entered into an agreement in writing with the defendant *Kraus* wherein and whereby he sold the said farm and certain personal property to the said *Kraus.* Said written agreement, among other things, provided as follows:

"This agreement, made this 4th day of February, 1919, by and between *Frank Klekoski,* party of the first part, and *Fred Kraus,* party of the second part, for and in consideration hereinafter mentioned, witnesseth,

"That the party of the first part sells his farm of 187 acres, in the town of Orion, known as the Dooley farm, together with all the live stock, hay, grain, and all feed and

all farm machinery. The live stock consists of 20 milk cows, 4 two-year-old heifers, 7 spring calves, 1 bull, 7 brood sows, 1 boar, 13 shoats, and 4 horses, everything now on the farm except household goods and vegetables in the cellar, and 1 spring shoat."

The agreement further provides for a consideration of $32,000 to be paid as therein provided. The possession of the farm was to be given about the 1st of March, 1919.

On or about the 5th of March, 1919, pursuant to said agreement, the said *Klekoski* executed and delivered to said *Kraus* a warranty deed of said real estate, together with possession of the articles of personal property referred to in said agreement of sale.

In the fall of the year 1919 the plaintiff sold to a brother-in-law, one Jones, certain cord-wood situated upon said fifteen-acre tract, and on or about the 1st of November, 1919, said Jones endeavored to remove such cord-wood from such tract, whereupon the said defendant *Kraus* objected to the removal of such wood and prevented said Jones from removing the same. Thereafter the said defendant *Kraus* removed considerable of said timber cut by said *Adney* and belonging to him, and sold the same and converted the proceeds to his own use.

The plaintiff thereafter and immediately thereupon commenced his action against the defendant *Kraus* for the recovery of the value of the timber cut by him and appropriated by said *Kraus*.

The defendant *Kraus* answered, admitting the purchase of said farm from the defendant *Klekoski,* and alleged that by virtue of the written agreement entered into on or about the 4th day of February, 1919, he purchased from the defendant *Klekoski* all of the property on said farm, including said timber, with the exception of certain personal property which by the terms of said written agreement was expressly reserved to the said *Klekoski*. The defendant *Kraus* further

alleged that he had no knowledge whatsoever of the sale of said timber on said fifteen-acre tract to the said plaintiff.

*Klekoski* was thereupon interpleaded as a party defendant in said action, and a cross-complaint was served by said defendant *Kraus* upon the other parties herein, including the interpleaded defendant, *Klekoski,* wherein he demanded judgment that in the event the plaintiff shall recover a judgment against him for and on account of the appropriation and conversion of said timber, then and in that event such defendant *Kraus* have and recover a judgment against *Klekoski* for the amount adjudged against him in favor of the plaintiff.

There appears no dispute as to the actual sale of the timber on said fifteen-acre tract to *Adney*.

At the opening of the trial *Klekoski* made an application to the court to amend his pleadings, praying for a reformation of the agreement of February 4, 1919, so as to provide for an exception of the timber from the articles of personal property sold by him to *Kraus*. This application was duly granted, and the court thereupon proceeded first to determine the issues raised upon such plea for reformation. At the conclusion of the hearing the court denied the application of *Klekoski* for a reformation of the agreement of February 4, 1919, and a jury was thereupon impaneled and the testimony was thereupon offered and received on the trial of the issues raised by the pleadings.

*Kraus* objected to the introduction of any evidence tending to explain said written agreement of February 4, 1919, upon the ground that the agreement was complete, that it fully expressed on its face the intentions of the parties; that in and by such agreement all the property upon the farm, including said timber, with the exception of certain articles of personal property provided for in such agreement, passed from *Klekoski* to *Kraus,* and that such agreement was not ambiguous.

The court, however, received substantially all the testimony offered for the purpose of showing the intentions of the parties in the making of said agreement of date of February 4, 1919, and for the purpose of throwing light upon the question as to whether or not the parties, by said agreement of date of February 4th, intended to convey to said *Kraus,* among other things, the timber belonging to the said *Adney.*

The court thereupon submitted to the jury a special verdict consisting of two questions, to which the jury made answer as hereinafter indicated:

"(1) What was the reasonable market value on or about November 1, 1919, at the fifteen-acre tract in question, of the cord-wood, excelsior wood, pole wood, and saw logs cut by the plaintiff, *Adney,* or his employees, and located upon said fifteen-acre tract on or about that day? *A.* $510.

"(2) Was it intended and agreed by and between the defendants *Fred Kraus* and *Frank Klekoski,* at the time of the execution and delivery of their contract in evidence, dated February 4, 1919, that the cord-wood, excelsior wood, pole wood, and saw logs located upon the fifteen-acre tract in question should be included in the sale agreed upon between them by said contract? *A.* No."

Thereupon the defendant *Kraus* moved the court to change the answer to the second question of the special verdict from "No" to "Yes," and for judgment dismissing plaintiff's complaint as to him, and for his costs in the action.

The motion of the defendant *Kraus* was granted, and thereupon the court ordered judgment in favor of the plaintiff against the defendant *Klekoski* for the sum of $510 damages, together with costs and disbursements, and also ordered judgment in favor of the defendant *Kraus* against the defendant *Klekoski* for his costs and disbursements in the action upon his cross-complaint, and judgment was thereupon duly entered and docketed in accordance with said order of the court.

*E. E. Brindley* of Richland Center, for the appellant.
*O. D. Black* of Richland Center, for the respondent *Kraus.*

DOERFLER, J.    The first question presented consists of an interpretation of the February contract.

"An interpretation consists in ascertaining the meaning of the words used. . . . The purpose of all interpretations is to ascertain and give effect to the actual contract entered into by the parties,—the contract which they intended to make and upon which their minds met." 2 Elliott, Contracts, § 1505.

The object and purpose of the agreement, as disclosed by the agreement itself, indicates that the parties had in mind the execution and delivery of a sales contract. This contract, among other things, contains the following: "That the party of the first part sells his farm of 187 acres, . . . together with all live stock, hay, grain," etc.

In and by the terms of the agreement the farm is described as the farm of the seller, and it is but a reasonable implication that by the use of the words "together with all live stock, hay, grain," etc., the parties had in mind the sale of the personal property therein described and mentioned and being the property of the seller. The specification of the live stock following the portion of the agreement above mentioned refers to the seller's live stock, and by using the words "everything now on the farm except household goods and vegetables in the cellar," etc., the parties clearly meant everything on the farm belonging to the vendor with the exception only of the household goods, etc. The expression in the contract, "everything now on the farm," cannot be severed from the balance of the agreement and given a literal meaning independent of the other provisions of the agreement. On the contrary, it must be construed in connection with the balance of the agreement, and must be given

a meaning in harmony with the object and purpose of the contract and the spirit thereof made manifest thereby.

"The primary object of all rules of interpretation and construction is to arrive at and give effect to the mutual intention of the parties as expressed in the contract when not forbidden by law. . . . All applicable laws in existence when an agreement is made, necessarily enter into and form a part of it, as fully as if they were expressly referred to or incorporated in its terms." 2 Elliott, Contracts, § 1507.

So that, reading this contract in the light of what has been said, and realizing that it is a sales contract, it must be concluded that the parties had in mind the sale of the seller's property and the purchase thereof by the purchaser. Such sale denotes a transfer of the title to the property from the seller to the buyer, and such transfer can only be effected where at the time of the sale the seller has title. "Where the seller has no title he can give none." Williston, Sales, § 130.

The record in this case conclusively establishes the fact that the timber cut on the fifteen-acre tract was sold for a valuable consideration by *Klekoski* to the plaintiff two years prior to the making of the February contract; so that there is no dispute on the question of whether or not *Klekoski* had title to the timber in question at the time he made his sales contract with *Kraus*. He could not, therefore, transfer title to this timber.

It is true that if *Kraus*, at the time of the execution of the February contract, had no knowledge of the sale of this timber to the plaintiff, then by assuming to sell the same *Klekoski* would have represented that he was the owner thereof, and under those circumstances *Kraus*, by buying the timber, would have indicated his reliance on the seller's representations and would have suffered damage by reason thereof. Under such circumstances, if *Kraus* is held responsible for a conversion of the timber, having converted

it upon a reliance on the implied representations of *Klekoski,* he would be entitled to judgment on his cross-complaint against *Klekoski* for the amount of the plaintiff's recovery.

So that it may be properly concluded thus far:

First. That in and by the February contract it was the intention of the parties to transfer and sell *Klekoski's* farm and his personal property.

Second. That *Klekoski* was not the owner of the timber when the February contract was made.

Third. That inasmuch as this timber was cut from off the farm formerly belonging to *Klekoski,* and lying upon the premises, in the absence of notice to *Kraus,* a proper construction of the February contract would imply an attempted sale on the part of *Klekoski* of this timber.

As to whether or not *Kraus,* at the time of the making of the February contract, had knowledge of the prior sale of the timber to the plaintiff the contract itself is silent. Therefore, in order to construe the contract, it becomes necessary to go beyond the wording of the contract itself and to take cognizance of the surrounding facts and circumstances in regard to the same in order to determine whether or not *Kraus* actually had such notice.

In his cross-complaint *Kraus,* among other things, alleges:-

"That on the 4th day of February, 1919, said defendant *Frank Klekoski* was the owner of and in possession of a farm of 187 acres in the town of Orion in said county, together with a large amount of stock, hay, grain, farm machinery, and other personal property, and that on said date the said·*Frank Klekoski* and the defendant *Fred Kraus* entered into an agreement in writing, duly signed by the parties, wherein and whereby the said *Frank Klekoski* agreed to sell the said farm and all such personal property, and including everything now on the place, except," etc.

In and by such allegation *Kraus* himself construes the contract to the effect that the phrase "everything now on

the place" refers to everything thereon owned by the defend-
ant *Klekoski.*

Let us assume that at the time of the sale of this timber
to the plaintiff *Kraus* had been present and a witness to
the sale.   Could he then be heard to say that the February
contract constituted an attempted sale of the timber on this
fifteen-acre tract to him?

Let us also assume that at the time of the February con-
tract the defendant *Klekoski* had engaged the services of
strangers on the farm, who with their plows and horses were
engaged in plowing a part of this farm.   Would the Feb-
ruary agreement convey or would it amount to an attempted
conveyance of these horses and plows to *Kraus?*   Certainly
not.   For it is made clear from the very terms of the contract
and the object and purposes thereof that it was the intention
of the parties to convey the property belonging to *Klekoski*
at the time.   It might as well be said that an automobile
upon the *Klekoski* property belonging to a physician attend-
ing members of *Klekoski's* family would also be included
in the conveyance.

In order, therefore, to determine whether or not there
was an attempted conveyance on the part of *Klekoski* of this
timber to *Kraus,* we must look into the facts and circum-
stances tending to show notice, or lack of notice, of the
prior sale of this timber to *Adney,* and it was for the purpose
of determining this vital question that the circuit court
properly saw fit to submit the second question contained in
the special verdict.

*Klekoski* claims that while at the Bank of Muscoda with
*Kraus,* immediately preceding the making and execution of
the February agreement, he told *Kraus* and the scrivener,
Marcus, that the timber on the fifteen-acre tract had been
sold to the plaintiff.   This is denied by *Kraus.*

The plaintiff testified that a short time prior to Febru-
ary 4, 1919, he met the defendant *Kraus* upon a train going

to Muscoda, and that on that occasion the two discussed the prospective purchase by *Kraus* of *Klekoski's* farm, and that the plaintiff at that time expressly told *Kraus* that he had purchased the timber on the fifteen-acre tract from *Klekoski,* to which *Kraus* replied that he knew of it and that he had seen the plaintiff on the tract on several occasions cutting wood.

The plaintiff is not materially interested as to who of the two defendants shall be held liable for the conversion of his timber.    Both of the defendants, it is conceded, and the evidence shows, are financially responsible and are able to adequately respond in damages.    There is nothing in the record to show that the plaintiff at all times was not as friendly to one defendant as he was to the other.    So that when it comes to the consideration of the plaintiff's testimony it must be considered as the testimony of a practically disinterested witness.

*Adney* also testified that in the month of April, 1919, he met *Kraus* at Muscoda, and that *Kraus* at that time requested of him that he remove certain trees so that he could build a new fence and so as to avoid cut trees from falling upon and injuring the same, and that he also at that time requested the plaintiff to permit certain black walnut trees to remain standing upon the premises.

*Kraus* in his testimony admits meeting the plaintiff at Muscoda in April and claims that *Adney* at that time told him that he was the owner of the timber on the fifteen-acre tract, but expressly denies the conversation with respect to the removal of the trees on account of the building of a fence and the alleged request to permit certain black walnut trees to remain standing upon the tract.

In the month of November, 1919, one Jones, a brother-in-law of the plaintiff, called at the fifteen-acre tract to remove certain cord-wood purchased by him from the plaintiff, and on that occasion, met *Kraus,* who refused to permit

Jones to remove the wood he had purchased. Shortly thereafter the plaintiff and his son Alvin and said Jones called on *Kraus* and protested the refusal of *Kraus* to permit Jones to remove the wood sold by the plaintiff to him, and *Adney* testified that he said to *Kraus:* "You know I have purchased this timber from *Klekoski,*" to which *Kraus* replied that he knew that, but added that he had also purchased it. This testimony of the plaintiff is corroborated by his son Alvin and by Mr. Jones, both of whom are substantially disinterested witnesses.

Notwithstanding the undisputed and admitted fact in this case that in April, 1919, *Kraus* was notified by the plaintiff that the latter had purchased the timber on the fifteen-acre tract, no inquiry was ever made by *Kraus* from *Klekoski* as to the truth of such statement, and the entire matter was permitted to rest until the month of November, 1919, when the Jones incident above referred to occurred.

During the months of March and April, 1919, according to the testimony of *Adney*, between forty-five and fifty cords of wood were removed from the fifteen-acre tract by himself and his son. It was testified also by the plaintiff and by one Frank Bob and one Olin Fazel that the removal of wood from the fifteen-acre tract was clearly visible from the house occupied by *Kraus*. *Kraus* himself admitted that if forty-five or fifty cords of wood had been removed as testified he would have noticed it. During these months, according to the testimony of *Kraus*, he passed this fifteen-acre tract on his way to Muscoda once or twice during each week.

This testimony clearly and persuasively indicates that at the time of the making of the agreement of February 4, 1919, *Kraus* had knowledge of the sale of the timber on the fifteen-acre tract. The testimony on the subject is overwhelming and is supported by the surrounding facts and circumstances of the case. It would be abundantly sufficient to establish notice and constitutes clear and satisfactory

evidence sufficient to warrant a reformation, if a reformation were necessary.

We therefore conclude that, inasmuch as *Kraus* had knowledge of the prior sale of the timber to *Adney,* it was the intention of the parties, in and by the agreement of February 4th, to transfer only such property upon the farm as at the time belonged to the seller, and that the answer of the jury to the second question of the special verdict was fully warranted by the credible evidence in the case, and that the court erred in changing such answer from "No" to "Yes" and in ordering judgment as above recited.

Under the circumstances we do not feel that it is necessary to reform the agreement of February 4th, as prayed for by the defendant *Klekoski.* Had we concluded that such reformation was necessary in order to grant the relief prayed for in the answer of the defendant *Klekoski,* we would have ordered the agreement reformed, for we are satisfied that the clear preponderance of the credible evidence shows conclusively that it was not the intention of the parties, at the time of the making of the February agreement, to include in the sale the timber situated on the fifteen-acre tract.

In accordance with the foregoing, the judgment of the circuit court is reversed, and judgment is ordered in favor of the plaintiff and against the defendant *Kraus* for the sum of $510 damages, together with his costs and disbursements of the action, and judgment is also further ordered dismissing the cross-complaint of the defendant *Kraus,* and for judgment in favor of the defendant *Klekoski* against said defendant *Kraus* for his costs and disbursements.

*By the Court.*—It is so ordered.